No. 28,375.

THE KANSAS WHEAT GROWERS ASSOCIATION, *Appellant*, v.
J. E. SMITH, *Appellee*.

(273 Pac. 437.)

Opinion filed January 12, 1929.

*T. A. Noftzger, George W. Cox, W. J. Masemore* and *Lawrence Weigand,*
all of Wichita, for the appellant.

*William Keith* and *Lester Wilkinson,* both of Wichita, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action by the Kansas Wheat Growers
Association against J. E. Smith, one of its members, originally to
enjoin the defendant from selling any of the wheat grown by him
to any other dealer during the life of the contract, to recover from
him 25 cents per bushel for all wheat sold by him to other dealers,
and for costs and attorney fee. The answer admitted the execution
of the contract attached to the petition, but denied all other allega-
tions of the petition.

This is the third trial of the case, and the matter of injunction
has ceased to be an issue, the contract having been for five years
from its date, September 14, 1921. The plaintiff claims 25 cents a

bushel for 4,437 bushels of wheat grown by the defendant in the years 1924 and 1925 and sold by him to other dealers in violation. of the terms of the contract, or $1,109.25, and a reasonable attorney fee.

The case was tried to a jury, which rendered a verdict in favor of the plaintiff for $512.50, on which judgment was rendered against the defendant, and from which judgment the plaintiff appeals. Plaintiff had moved the court for a directed verdict, later for a judgment for the whole amount claimed and attorney fee notwithstanding the verdict, and for a new trial, all of which motions were overruled. The only question now involved is, Was the plaintiff entitled under the evidence to a verdict and judgment for the whole amount, or $1,109.25, instead of $512.50, and for attorney fee?

Among the provisions of the contract signed by the defendant were the following:

"The association agrees to buy and the grower agrees to sell and deliver to the association all of the wheat produced by or for him or acquired by or for him as landlord or lessor during the years 1921, 1922, 1923, 1924 and 1925.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"The grower shall have the right to stop growing wheat and to grow anything else at any time at his free discretion; but if he produces any wheat during the term hereof it shall all be included under the terms of this agreement and must be sold only to the association.

"Nothing in this agreement shall be interpreted as compelling the grower to deliver any specified quantity of wheat per year; but he shall deliver all the grain produced or acquired by or for him as landlord or lessor.

"This agreement shall be binding upon the grower as long as he produces wheat directly or indirectly, or has the legal right to exercise control of any commercial wheat or any interest therein during the terms of this contract.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"The grower hereby agrees to pay to the association for all wheat delivered, sold, consigned, withheld or marketed by or for him, other than in accordance with the terms hereof, the sum of twenty-five cents per bushel, as liquidated damages for the breach of this contract.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"If the association brings any action whatsoever, by reason of a breach or threatened breach hereof, the grower agrees to pay to the association all costs of court, costs for bonds and otherwise, expenses of travel, and all expenses arising out of or caused by the litigation and any reasonable attorney's fees expended or incurred by it in such proceedings."

The evidence shows that defendant fully complied with the terms of the contract for the first three years thereof, but failed to deliver any wheat to the association during the years 1924 and 1925. Plaintiff introduced evidence showing defendant delivered or di-

rected the delivery to other grain dealers during those two years of 4,437 bushels of wheat, and received payment therefor either in his own name or that of his brother-in-law. The defendant was the only witness in his behalf. He did not attempt to dispute the accuracy of the amount of wheat delivered to the two dealers, who had testified concerning the same, but stated that in 1923 he decided he wasn't going to farm wheat any more under the Kansas Wheat Growers contract; that he made a contract with his brother-in-law, who had an interest in and represented the owners of the land he was farming, whereby the brother-in-law was to pay him a lump sum of $1,100 for putting in the wheat, and if it was a paying proposition he was to get pay for his work in harvesting it, if not he was to harvest it for nothing; that he got some pay for harvesting it, but did not remember how much; that he used the same farming and harvesting machinery he had previously used in the growing of the wheat. During the year 1924 he purchased a farm from an executor where one-third of the growing wheat crop went to the purchaser. He declined to take it that way until he told his brother-in-law he would not take the wheat, and the brother-in-law apparently agreed to take it, but never paid anything for it. Nothing was said about price. Defendant says positively he had no interest in any wheat grown or delivered in 1924 and 1925. There was introduced in evidence by the plaintiff a bill of sale made by defendant May 2, 1925, selling to the brother-in-law one-third interest in 120 acres of growing wheat and a two-thirds interest in 140 acres on the home farm, which is in the usual form for a bill of sale, declaring him to be the lawful owner of the wheat so sold. This was filed with the register of deeds July 2, 1925.

As stated above, there is no conflict in this case as to the number of bushels involved. The only evidence by the defendant in that respect was that he did not know. So the evidence as to the number of bushels of wheat involved herein is absolutely undisputed. The only controversy in the case is whether the defendant was interested in any of the wheat grown on these two places during those two years. He says he was not interested in any wheat grown those two years. He treated it as a whole and made no exception to any part of it. He is liable for all of it or none of it. That was the question that went to the jury, but it saw fit to split the verdict and make the result about fifty-fifty. That is not the province of a jury. The litigants herein were entitled to an answer from the jury on the whole controversy involved. If the jury accepted the theory

of the defendant it should have rendered a verdict in his favor. He was either right or wrong in his position. The jury said he was wrong, but proceeded, as in common parlance, to let him down easily. In this it mistook its function, as was said in the case of *Bressler v. McVey*, 82 Kan. 341, 108 Pac. 97, the syllabus of which is as follows:

"Where the sole question submitted to a jury is whether the plaintiff is entitled to recover upon a contract, and there is no dispute concerning the amount nor any basis for a finding that the defendant owes a less sum than that claimed, a verdict for half the amount should not be received, and if received should be set aside as contrary to the evidence at the instance of either party."

"In an action for the recovery of money only, where the evidence for the plaintiff tends to prove that a definite amount is due, and the evidence for the defendants tends to prove that nothing whatever is due, a verdict in favor of the plaintiff for a less amount than that shown by the evidence must be set aside and a new trial be granted." (*Dutton v. Brown*, 122 Kan. 277, syl., 252 Pac. 207.)

"A defendant is entitled to a reversal where the court sets aside a general verdict in plaintiff's favor and renders judgment against the defendant for a sum which is not sustained by the evidence or findings, and which is contrary to any theory contended for although less than the plaintiff claimed and less than he was entitled to recover, if his theory of the case was correct." (*Hart v. Gerretson Co.*, 91 Kan. 569, syl., 138 Pac. 595. See, also, *Miller v. Miller*, 81 Kan. 397, 105 Pac. 544.)

These cases indicate that the verdict cannot stand and must be set aside, but R. S. 60-3317 and 60-3330 provide that the appellate court "shall render such final judgment as it deems that justice requires," and in *Gartner v. Oil & Gas Co.*, 115 Kan. 88, 222 Pac. 72, it was held:

"The directory provision of the code that in actions for the recovery of money the jury shall assess the amount of recovery, does not require the setting aside of the verdict nor prevent the rendition of judgment for the amount shown by the verdict to be due where the verdict definitely shows by a mere computation the amount for which judgment should be given." (Syl. ¶ 2.)

The situation in *Manufacturing Co. v. Porter*, 103 Kan. 84, 172 Pac. 1018, was quite similar to that in the case at bar, where it was said that the record showed no way for the defendant to rightly prevail, and that it was no favor to prolong the litigation over a liability which he could not escape. The paragraphs quoted above show a positive liability under such contract for wheat grown directly or indirectly unless he desires to discontinue the business. The verdict of the jury is that he did not discontinue.

"Where all the controlling facts to determine a liability are established, and after two trials and two appeals no defense to the liability is disclosed and where a new trial would serve no purpose, final judgment may be ordered by the supreme court under R. S. 60-3317—following *Manufacturing Co. v. Porter,* 103 Kan. 84, 172 Pac. 1018." (*Bolinger v. Giles,* 125 Kan. 53, syl. ¶ 4, 262 Pac. 1022. See, also, *Mitchell v. Derby Oil Co.,* 117 Kan. 520, 232 Pac. 224.)

The judgment is reversed and the cause remanded, with instructions to render judgment for plaintiff for $1,109.25, and for costs, and to render a further judgment for plaintiff for an attorney fee in an amount that will to the court appear to be reasonable under the evidence that has already been introduced.