No. 34,351

ADAM SCHREINER and LYDIA SCHREINER, *Appellees*, v. C. H. ROTHGARN and A. P. ROTHGARN, *Appellants*.

(92 P. 2d 59)

Opinion filed July 8, 1939.

*Wayne H. Lamoreux*, of Great Bend, for the appellants.

*Clyde P. Cowgill*, of Topeka, *Wm. Osmond, T. B. Kelly* and *Fred L. Conner*, all of Great Bend, for the appellees.

The opinion of the court was delivered by

HOCH, J.: Plaintiffs secured a judgment against the defendants in an action to recover money which they alleged belonged to them and was wrongfully retained by defendants. Defendants appeal, alleging various errors to which reference insofar as necessary will hereinafter be made.

Plaintiffs, Adam Schreiner and Lydia Schreiner, his wife, will be referred to herein as Schreiner and Mrs. Schreiner. Defendants, C. H. Rothgarn and A. P. Rothgarn, his wife, will be referred to as Rothgarn and Mrs. Rothgarn. Plaintiffs were residents of Reno county, and defendants of Barton county.

Plaintiffs alleged that in the spring of 1932 they owned certain city lots in the town of Milo, Iowa, which they listed for sale with Rothgarn; that at the solicitation of Rothgarn they signed, acknowledged and delivered to him a deed in blank to the property, the name of the grantee to be filled in by Rothgarn when the property was sold; that in the spring or summer of 1932 Rothgarn sold the property for the sum of $1,600, receiving payment therefor from the purchaser; that plaintiffs permitted Rothgarn to keep the money for them, and in April, 1935, learned that he had paid "the said $1,600" to Mrs. Rothgarn and that they allowed Mrs. Rothgarn to keep the money for them; that the money was left with the Rothgarns upon their assurance that it would be safe in their hands; that on January 4, 1938, they first made demand for the money, but that defendants refused and have continued to refuse to deliver it to them.

The petition did not allege any agreement that interest was to be paid, but in the concluding paragraph, without giving the rate at which, or the date from which interest was computed, it was alleged that the interest on the $1,600 "amounted to $576 during the time defendants had it," prior to the date of demand, and that there was due from defendants $2,176 with interest at six percent after January 4, 1938. Rothgarn answered with a general denial and alleged that the plaintiffs had traded the Iowa property to him as the down payment on a farm in Rush county, Kansas, which he had agreed by written contract to sell to them; that the agreement was that he would take the Iowa property as the down payment in the sum of $800 and would give the plaintiffs credit for any amount in excess of which he might receive from the sale of the Iowa property; that the balance due on the Rush county farm after the credit of $800 was $3,700; and that his net proceeds from the sale of the Iowa property were $712.69; that the plaintiffs took possession of the Rush county farm, but made default in the terms of the contract by failure to pay interest, taxes, etc., and surrendered possession of the farm. Rothgarn's answer further alleged that plaintiffs were informed in the late spring or summer of 1932 that he had only received $712.69 for the Iowa property, and contended that the action was barred by the statute of limitations. Rothgarn also filed a cross petition asking judgment against plaintiffs for $140.71, being the balance alleged to be due on a note of $150 executed by plaintiffs on March 9, 1933.

Mrs. Rothgarn demurred to the petition on the ground that it did not state a cause of action against her, and this demurrer was overruled.

The case was tried before a jury, and at the conclusion of plaintiff's evidence Rothgarn demurred to the evidence on the ground that plaintiffs had offered no evidence as to the price received for the Iowa property except a deed which recited that the consideration was $775, and that the action was barred by the statute of limitations. Mrs. Rothgarn demurred for the same reason and for the further reason that there was no evidence to show liability on her part and no evidence of contractual relation between her and the plaintiffs. Both demurrers were overruled and evidence was then offered by the defendants.

The jury rendered a verdict reading as follows:

"We the jury empanelled and sworn in the above-entitled case do upon our oaths find for the plaintiffs and against the defendants C. H. Rothgarn and A. P. Rothgarn and assess the amount of their recovery at $1,400."

On the following day and in the absence of the jury, but before the jury had been dismissed, the court, upon motion of the plaintiffs, modified the verdict and fixed the amount of recovery at $2,176 with interest at six percent from January 4, 1938. This was done over the objection of the defendants.

We will first examine instruction No. 10, and in connection therewith the action of the court in increasing the amount of the verdict, both of which are among the principal grounds for reversal urged by appellants.

Appellees contend that appellants did not object to instruction No. 10 "until after the verdict," while appellants state that instruction No. 10 "was objected to by both plaintiffs and defendants." On this point the record is not entirely clear, but, in any event, the propriety of instruction No. 10 was clearly raised on the motion for new trial and will be here considered as having been timely made.

After reciting the allegations of the plaintiffs that they employed Rothgarn to sell the Iowa property for $1,600 and that he did sell it in 1932 for that amount and collect the money, and that he fraudulently persuaded the plaintiffs to let him keep the money, and that sometime in 1935 Mrs. Rothgarn received the $1,600 from Rothgarn and advised the plaintiffs that she was keeping the money for them, and that return of the money was first demanded on January 4, 1938, instruction No. 10 concludes with this paragraph:

"So, if the plaintiffs have proved by a preponderance of the evidence that the transaction as claimed by them did take place, and that either of the defendants, C. H. Rothgarn or A. P. Rothgarn, are now holding, and have not

paid to the plaintiffs said sum, then your verdict should be for the plaintiffs in the sum of $2,176, with interest thereon at the rate of six percent per annum from January 4, 1938."

The first question which arises in connection with this instruction relates to the matter of interest. The petition alleged that Rothgarn received $1,600 for the Iowa property sometime "in the spring or summer of 1932—the exact date being unknown to the plaintiffs"— and there was no allegation of any agreement to pay interest. There was no allegation that demand for interest had been made from 1932 to January 4, 1938, and the only reference to the matter of interest in the petition was its closing allegation, heretofore referred to, that $576 interest was due to January 4, 1938. If Rothgarn received $1,600, as alleged by the plaintiffs, and the money was simply left with him for safekeeping, it should be treated as a trust fund and no interest would accrue prior to demand. On the other hand, if it is to be treated as a debt drawing interest, as alleged by plaintiffs, and there was no obligation evidenced in writing, appellants' contention that the claim was barred within three years under the statute of limitations, G. S. 1935, 60-306 (2), must be given consideration. The court gave no attention in its instructions as to whether the money, if received by defendants, was to be treated as a debt or a trust fund, but simply instructed that if Rothgarn received $1,600, as alleged, the jury should find for the plaintiffs in the sum of $2,176, which included $576 in interest. Apparently, no attention was paid to the contention of defendants that the money received for the Iowa property was to be applied as a down payment on the Rush county farm. In any event, in the absence of any allegations in the petition or any testimony as to the rate of interest which was to be paid, or the time at which interest was to begin, except the allegation that the money was received "sometime in the spring or summer of 1932," there was no basis for an instruction that the jury, if it found for the plaintiffs, must find that there was $576 in interest due. More than that, the plaintiffs alleged that Mrs. Rothgarn said in 1935 that she had received the money, and the court instructed the jury that it was plaintiffs' contention that she received the $1,600 in 1935, but in spite of that fact the court entered a judgment against Mrs. Rothgarn as well as against Rothgarn which included interest from 1932. In no event, on the record, could Mrs. Rothgarn be liable for interest prior to 1935.

The only testimony offered by plaintiffs to support their allegation that the Iowa property had been sold for $1,600 was the testi-

mony of Schreiner that Rothgarn told him he had received $1,600 for the property and the testimony of Mrs. Schreiner that Mrs. Rothgarn told her in 1935 that she had received the $1,600 from Rothgarn and was keeping it for plaintiffs. Defendants denied having made such statements and said that the property had been sold for $775 and that after deducting taxes and fees due in connection with the sale Rothgarn had received $712.69 for the property. A deposition of J. E. Clayton, a real-estate dealer of Milo, Iowa, through whom it was alleged by Rothgarn the sale had been conducted, was introduced corroborating Rothgarn's testimony as to the amount received. M. H. Henderson, cashier of the Peoples Trust and Savings Bank of Indianola, Iowa, testified by deposition that his bank had assisted in handling the transaction and he also corroborated Rothgarn's testimony.

It also appeared on the face of the deed to the Iowa property, signed by plaintiffs and submitted in evidence, that the consideration received was $775, but plaintiffs answer this with the statement that the deed was blank as to amount and as to the name of the grantee when they signed it and that these omissions were later filled in by the defendants. Also, several witnesses testified that Schreiner had told them that he had traded in his Iowa property on a Rush county farm, all of which testimony Schreiner denied.

We consider next the action of the court in modifying the verdict. As heretofore noted, the verdict read "We find for the plaintiffs and against the defendants and assess the amount of their recovery at $1,400." Plainly, that verdict could not stand. On no theory advanced nor by any method of computation suggested were there any grounds for fixing the amount of recovery at $1,400. Plaintiffs testified that defendants told them the property had been sold for $1,600. Evidently the jury did not believe the plaintiffs' testimony on that point. Rothgarn testified that he was to sell the Iowa property and credit the proceeds on the Rush county farm and agreed that the credit would be not less than $800. He testified that the property was sold for $775 and introduced considerable corroborative testimony to that effect. If the jury believed defendants' testimony as to the selling price, no computation of interest to be added will produce a total amount of $1,400. Under the testimony the property sold either for $1,600 or $775.

There was also conflicting testimony as to the amount unpaid on a promissory note given by Schreiner to Rothgarn in 1935 covering

a loan of $150. Although plaintiffs allege that Rothgarn had $1,600 of their money, with no interest being paid, and no demand for interest or principal until January, 1938, Schreiner borrowed $150 from Rothgarn in 1933. Whatever testimony as to this item may be believed or disbelieved, it furnishes no help in arriving at a computation of $1,400.

No assumption of belief by the jury in the testimony of the plaintiffs or defendants, either in whole or in part, can produce a verdict of $1,400. The verdict was irreconcilable on its face and should have been set aside, the case returned to the jury for further consideration or a new trial granted. (27 R. C. L. 889, 890; 64 C. J. 1088, 1100; *Morley v. Wilson*, 109 Kan. 603, 201 Pac. 81.) The court was without authority to modify the verdict and render judgment against the defendants for $2,296.77. Many decisions support the right of the court to modify a verdict where it appears that there has simply been a mistake in computation, or to fix an amount where there is undisputed testimony as to the amount due, if liability is established by the verdict. Such a situation does not exist in the instant case. There had been disputed testimony both as to the price at which the Iowa property was sold and as to the contention of the defendants that the proceeds were to be applied as a credit on the purchase of the Rush county farm. No arithmetical or clerical error, no mere mistake in computation was involved, and under the facts shown by the record neither the trial court nor this court has authority to modify the verdict as suggested by appellees. The Kansas decisions and others cited by appellees have been examined and are clearly distinguishable from the case at bar. Appellees cite as a leading case *Kansas Wheat Growers Ass'n v. Smith*, 127 Kan. 267, 273 Pac. 437. The first paragraph of the syllabus is as follows:

"In an action for the recovery of money only, where the evidence of the plaintiff tends to show that a definite amount is due, and the evidence of the defendant tends to show that he is not liable for any amount whatever, without attempting in any manner to correct or modify the figures given by plaintiff, a verdict for plaintiff for a less amount than that shown by the evidence should be set aside." (Syl. ¶ 1.)

The second paragraph of the syllabus states the proposition that a new trial will be avoided under R. S. 60-3317 and 60-3330 by directing a judgment for a definite amount shown by the evidence to be due in cases where "the undisputed evidence shows a definite amount of liability, if any exists." In the opinion are cited quotations from a number of Kansas cases supporting the statement

heretofore made in the first paragraph of the syllabus. It is unnecessary to lengthen this opinion by analysis of other cases cited. We find nothing in them contrary to the view already expressed. G. S. 1935, 60-3317, grants to this court no power to change the verdict under the facts stated in this case which the trial court did not have. That section simply provides for disregard of mere technical errors and irregularities where it does not appear that the rights of the complaining party have been prejudiced thereby and where, upon the whole record, it appears that substantial justice has been done, and for the rendering of such final judgment under such circumstances as justice requires.

Inasmuch as the conclusions above stated dispose of the appeal other contentions of the appellants need not be considered.

The judgment is reversed, and the cause remanded with direction to grant a new trial.