No. 37,670

In the Matter of the Estate of Anna Nonnast, Deceased. JOHN NONNAST, Claimant, *Appellant,* v. EDWARD NONNAST, KATHRYN MUSBACH, LOUISE M. MUSBACH and IRENE WOODS, *Appellees.*

(211 P. 2d 110)

Opionion filed November 12, 1949.

*O. A. Wilson* and *W. J. Glass,* both of Jetmore, argued the cause, and were on the briefs for the appellant.

*Ray McCombs,* of Ness City, argued the cause, and was on the briefs for the appellees.

The opinion of the court was delivered by

HARVEY, C. J.: This case originated in the probate court of Ness county by a petition filed by John F. Nonnast in the estate of his mother, Anna Nonnast, deceased, in which the petitioner alleged that he has a just and valid claim against the estate of Anna Nonnast for services performed by him for Anna Nonnast, decedent, at her request and during her lifetime, and in support thereof alleged:

"That on or about the 28th day of March, 1941, the said Anna Nonnast, deceased, requested the petitioner to live with her on her farm, care for the livestock thereon, and manage and operate said farm for her; that at the same time and as part of said request, the said Anna Nonnast orally promised and agreed with the petitioner to pay him for such services when she became financially able to do so.

"That pursuant to said request and in reliance on said promise to pay him for such services, the petitioner took over the active operation and management of said farm owned by Anna Nonnast, and the care of the livestock thereon, on or about the 28th day of March, 1941, and continued to operate and manage said farm and care for said livestock until the death of Anna Nonnast on November 11, 1947; that said farm consisted of approximately 360 acres of land and improvements located in Ness County, Kansas.

"That the petitioner has never received any payment for the said services by him performed for the said Anna Nonnast and is entitled to have and recover from the assets of the estate of the said Anna Nonnast, deceased, an amount equal to the reasonable value of such services by him performed; that the reasonable value of such services is $7,000.00."

To this petition the administrator filed an answer, which was a general denial, and one brother and three sisters of the petitioner, heirs at law of Anna Nonnast, filed an answer in which they denied "each and every material allegation in such petition contained," and "for further answer allege and state that the said John F. Nonnast has been fully paid for all services rendered within three years preceding the filing of his petition, and that any other claim of the said John F. Nonnast is now barred by the statute of limitations." Without a hearing in the probate court the claim was removed to the district court upon the petition of the claimant, where a trial was had by the court. After hearing the evidence the court made conclusions of fact and of law as follows:

"I. Anna Nonnast during her lifetime was the owner of a quarter of land in Ness County, Kansas. On that quarter was her home and it had about sixty (60) acres in cultivation—the rest being in pasture. In April, 1944, she inherited a one-half interest in another quarter of land and soon thereafter

acquired the other one-half interest of the others in this quarter. It had about eighty (80) acres in cultivation—the other (80) acres being grass land.

"II. Anna Nonnast owned no farm machinery but the real estate was farmed by machinery furnished by her sons, Joseph A. Nonnast and Julius Nonnast. She kept about twelve (12) head of milk cows and other cattle on this real estate. Some of these cattle were owned by Julius Nonnast. The milk cows produced about Fifteen Dollars ($15.00) to Twenty Dollars ($20.00) a week income.

"III. The cultivated land was planted to wheat, barley, and feed.

"IV. In March, 1941, John Nonnast came home and thereafter resided on the farm with his mother until her death on November 11, 1947. He did the usual farm work on the farm—prepared the ground; planted it to wheat, barley and feed; and looked after the cattle. He received as part compensation for his labor, his board and room, part of his clothing, and part of his spending money; but was never paid any wages by his mother during her lifetime.

"V. John Nonnast and his mother, Anna Nonnast, in March, 1941, at the time he returned home, entered into an oral agreement, whereby John agreed to perform the farm work on this farm and his mother agreed to pay him wages for this work.

"VI. The usual and customary wages for the kind and amount of work performed by John Nonnast on the farm was as follows: 1941—$400.00; 1942—$500.00; 1943—$500.00; 1944—$600.00; 1945—$700.00; 1946—$600.00; 1947—$700.00.

"The court further finds as a Conclusion of Law that the claim of John Nonnast should be allowed against the estate of Anna Nonnast, deceased, in the amount of $4,000.00 and for his costs herein accrued."

The claimant moved to strike out of conclusion of fact No. 4 the statement that claimant received as part compensation for his labors his board and room, part of his clothing and part of his spending money upon the ground that there was no evidence to sustain it. It is clear from the evidence that he received his room and board, and there is substantial evidence in the record to the effect that he received a part of his clothing and part of his spending money. The claimant also moved the court to strike out finding No. 6 and to substitute therefor a finding of fact as follows:

"The usual and customary wages, as shown by the undisputed evidence, for the kind and amout of work performed by John Nonnast on the farm was as follows: 1941—$972.00; 1942—$1,248.00; 1943—$1,560.00; 1944—$1,560.00; 1945—$1,560.00; 1946—$1,560.00; 1947, 10 months—$1,300.00, less credit for two months of outside employment at $5.00 per day, $260.00, and to allow his claim in the sum of $7,000.00."

This request was denied and the court rendered judgment for claimant for $4,000.

No motion for a new trial was filed by the claimant or those op-

posing the claim. The claimant has appealed from the judgment rendered.

In this court appellant first contends that the court erred in refusing to strike out part of finding No. 4. As we have seen, there was testimony to sustain the finding of the court. More than that, if it was error at all it was a trial error which could be reached only after the filing of a motion for a new trial.

Appellant next contends that the trial court erred in refusing to make the substituted finding No. 6 as requested. The argument in support of this contention is based upon the rule of law stated in *Manufacturing Co. v. Porter*, 103 Kan. 84 (3d syl.), 172 Pac. 1018, where it was held:

"Where all the controlling facts to determine a liability are established, and the defense to the liability wholly fails, a new trial is unnecessary, and final judgment on the liability should be ordered."

It is otherwise stated in *Kansas Wheat Growers Ass'n v. Smith*, 127 Kan. 267 (syl. 2), 273 Pac. 437:

"Where the jury has by its verdict positively failed to accept the theory of the defendant that there was no liability under a certain contract, and the undisputed evidence shows a definite amount of liability, if any exists, a new trial will be avoided under R. S. 60-3317 and 60-3330 by directing that a judgment be rendered for the definite amount shown by the evidence to be due. . . ."

This rule was followed and applied in *Reeves v. Child*, 165 Kan. 341, at page 347, 194 P. 2d 919. In support of this rule of law here it is pointed out that the appellees denied the existence of the contract alleged by plaintiff which the court found to have been made. Indeed, there were several witnesses present when the contract as alleged in plaintiff's petition was made. Appellant contends that if the contract was made the evidence as to the amount due is undisputed. This contention is based upon the testimony of the witness Glen Pemper, which was as follows, after stating his qualifications:

"Lived in Ness County all his life and engaged in farming. Familiar with the prevailing wages paid farm hands from 1941 to the present time. The ordinary and customary wage for a single man in the year 1941 was 'Four and a half dollars a day and board.' In 1942—'About the same—around four and a half to five dollars a day. It increased a little.' In the year 1943—'About five dollars a day.' In the year 1944—'Five dollars a day. At harvest time it increased up to ten dollars a day.' In 1945—'Five dollars a day.' 'Ten dollars a day at harvest.' The number of days in a year for harvest was 'from eighteen to twenty-five.' In 1946—'Five dollars a day,' 'harvest ten dollars a day.' In 1947—'Five dollars a day—some paid six or seven dollars.' 'At harvest time ten to twelve dollars.'"

This testimony was not germane to the contract alleged and

proved. Appellant made no allegation in his petition that he was hired as a farm hand by the day, nor did he offer any evidence to that effect. It is well known that the wages of a farm hand hired by the day are larger than those of one hired under the terms and for the work the appellant was to do. So it cannot be said here that "the undisputed evidence shows a definite amount of liability." Indeed, it cannot be said that the requested substituted finding accords with the testimony of the witness unless it can be said that Sundays were not to be counted (although the evidence disclosed that the principal part of his work was to milk an average of ten cows twice a day) and that appellant never assisted in the harvest. We find no specific evidence in the record as to what was the reasonable amount of compensation for the appellant for the work he did. Perhaps the court, who had lived in the county many years, used his own judgment in determining those matters. If the appellees had filed a motion for a new trial in which the question was raised, that the judgment should be reversed because of a lack of evidence to sustain it, we would have difficulty in affirming it. In the brief of appellees it is explained why that position was not taken. But we are not concerned with reasons. They did not object to the judgment in the trial court, and are not objecting to it here. The appellant did not ask for a new trial and apparently does not want one.

We find no error in the record of which the appellant can complain. The judgment of the trial court is affirmed.