Nos. 37,985 and 37,986 Consolidated

No. 37,985

O. J. CONNELL, JR., as Administrator of the Estate of O. J. Connell, Deceased, *Appellee*, v. THE SACO OIL COMPANY, INC., a Kansas Corporation; and M. M. BUIST, F. J. BUIST and E. J. BRIBACH, as individuals and as officers and purported officers of the Saco Oil Company, Inc., a Kansas Corporation, (M. M. BUIST and F. J. BUIST), *Appellants*.

No. 37,986

O. J. CONNELL, JR., as Administrator of the Estate of O. J. Connell, Deceased, *Appellee*, v. THE YUMA OIL COMPANY, INC., a Kansas Corporation; THE SACO OIL COMPANY, INC., a Kansas Corporation; and M. M. BUIST, F. J. BUIST and E. J. BRIBACH, as individuals and as officers and/or purported officers of the above named corporations, (M. M. BUIST and F. J. BUIST), *Appellants*.

(223 P. 2d 1020)

Opinion filed November 10, 1950.

*K. M. Geddes*, of El Dorado, argued the cause, and *George J. Benson*, also of El Dorado, was with him on the briefs for the appellants M. M. Buist and F. J. Buist.

*Gale Moss*, of El Dorado, argued the cause, and *A. W. Hershberger, J. B. Patterson*, and *Richard Jones*, all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: These two actions were brought by the administrator of the estate of O. J. Connell, deceased, to recover as part of the decedent's estate corporation stock transferred from decedent either before or after his death. They were heard together in the court below and consolidated here. Two of the defendants, M. M. Buist and F. J. Buist, demurred to plaintiff's amended petitions. In each case the demurrer was overruled by the court. Pleadings in each case insofar as the pertinent question on appeal is concerned are identical; therefore, in the interest of brevity, one case only will be stated and the conclusion reached therein will be equally applicable to the other case.

The actions were commenced June 9, 1949, by the filing of petitions which, in each case, were later amended to conform with court orders. We will narrate the formal parts of the petition in case no. 37,985 and quote those parts pertinent to the question involved here.

Plaintiff for his cause of action against defendants, The Saco Oil Company, Inc., a Kansas corporation, and M. M. Buist, F. J. Buist, and E. J. Bribach, as individuals and as officers of the Saco Oil Company, alleged plaintiff's residence to be El Dorado, Kan.; that he was appointed administrator of the estate of O. J. Connell, deceased, by the probate court of Butler county, Kansas, on August 13, 1947; that the action was commenced by virtue of an order of the probate court; that the Saco Oil Company is a corporation and that M. M. Buist is secretary-treasurer of the corporation, F. J. Buist is vice-president, and E. J. Bribach is acting in the capacity of president. The residence of all parties was set forth. It was alleged that O. J. Connell died intestate at El Dorado on August 3, 1947; that he had been president of defendant corporation from the time of its organization in 1934 until his death; that according to the stock record books of the corporation, twenty-three stock certificates were issued by the date January 12, 1948; that until May 5, 1939, the capital stock consisted of 500 shares of which O. J. Connell owned more than 51 percent; on May 5, 1939, the outstanding capital stock of defendant corporation was increased to 1,500 shares; certificate No. 16 was issued to O. J. Connell for 500 shares and certificate No. 15 to E. J. Bribach for 500 shares.

"9. That on December 31, 1946, the common stock of said defendant corporation was owned, in the following manner, to-wit:

(a) O. J. Connell.
Certificate No. 11 for 200 shares. Certificate No. 12 for 48 shares.
Certificate No. 13 for 80½ shares. Certificate No. 16 for 500 shares.
Certificate No. 17 for 1 share. Total 829½ shares.

(b) E. J. Bribach.
Certificate No. 14 for 166½ shares. Certificate No. 15 for 500 shares.
Total 666½ shares.

(c) M. M. Buist.
Certificate No. 4 for 1 share. Certificate No. 18 for 1 share.

(d) F. J. Buist.
Certificate No. 9 for 1 share.

(e) L. M. Nixon.
Certificate No. 19 for 1 share.

"10. *That on the 13th day of February, 1947, the said decedent, O. J. Connell, became ill and incapacitated, that he was on said date, and at the time of his death, the owner of 829½ shares of stock of the defendant,* The Saco Oil Company, Inc., as above set out, which 829½ shares constituted more than 51% of the total outstanding shares of capital common stock of said defendant corporation.

"11. That in addition to the 829½ shares of stock owned by decedent as above set out, he was, *at all times pertinent hereto and at his death, in fact the owner of:* Certificate No. 4 and 18, for one share each, held by M. M. Buist for convenience only, and Certificate No. 9, for one share, held by F. J. Buist for convenience only.

"12. That since the year 1931 and continuously until the death of said O. J. Connell, the defendant M. M. Buist, was the employee of the decedent and after 1934 an officer of the corporation; that she was the trusted confidant of O. J. Connell in all business matters; that she was responsible for the personal books, papers and records of business affairs of said O. J. Connell and either kept, or directed the keeping of books, records and papers, by others, of the said O. J. Connell with relation to the business matters of said O. J. Connell and that she did, as an officer, keep the books, records and papers of the defendant corporation. That the said books, records and papers of said O. J. Connell were kept at the office of the defendant corporation in El Dorado, Kansas, by said M. M. Buist and were under her exclusive custody and control from the date of the death of the said O. J. Connell until on or about the . . . day of . . ., 1948, when they were delivered either to this plaintiff, as Administrator, or to the Probate Court of Butler County, Kansas.

"13. That the defendant E. J. Bribach, was a business associate of said O. J. Connell for more than ten years immediately prior to the death of said O. J. Connell; that they were mutually interested in joint ventures as between each other and as between themselves and defendant corporation; that he was familiar, in a general way, with the personal business of O. J. Connell and the defendant corporation.

"14. That at all times pertinent hereto the stock certificates owned by O. J. Connell, evidencing the ownership in him of 829½ shares of the capital common stock of the defendant corporation, were kept and left at the office of decedent O. J. Connell, the same being the office of the defendant corporation at El

Dorado, Kansas; that on the 13th day of April, 1947, and continuously there-after, until delivered to the Probate Court of Butler County, Kansas, said certificates, more specifically described by number as Stock Certificate No. 11, 12, and 13, were under the exclusive care and control of defendants M. M. Buist, F. J. Buist and E. J. Bribach, and defendant corporation.

"15. That certificate No. 12 of said defendant corporation, issued to and owned by O. J. Connell was on a date unknown to this plaintiff, signed by him on the assignment blank thereon provided, by the placing of the signature 'O. J. Connell' thereon and the remainder of said assignment form *being left blank; that delivery thereof was made to no person, as assignee, by said O. J. Connell.*

"16. That on some date, unknown to this plaintiff but prior to the date said stock certificates No. 11, 12 and 13, purportedly cancelled, were delivered to and placed in the custody of the Probate Court of Butler County, Kansas, the said defendants, M. M. Buist, F. J. Buist and E. J. Bribach did enter into a conspiracy to defraud the said O. J. Connell or the estate of said O. J. Connell, deceased, of the said capital common stock of the defendant corporation represented by said stock certificates No. 11, 12 and 13, to-wit: 329½ shares. That the said conspiracy consisted of an agreement by and between each of said defendants, M. M. Buist, F. J. Buist and E. J. Bribach, to obtain fraudulently, dishonestly and by unlawful conversion to, for, and for the benefit of said M. M. Buist, F. J. Buist, and E. J. Bribach, all of said 329½ shares of said stock belonging to the said O. J. Connell or to the estate of said O. J. Connell, deceased, thereby unlawfully, illegally and by unlawful conversion obtaining for and on behalf of said M. M. Buist, F. J. Buist and E. J. Bribach ownership of a majority of the common stock of said defendant corporation in themselves and away from the said O. J. Connell or the estate of O. J. Connell, deceased.

"17. That in furtherance and consummation of said conspiracy to so defraud as alleged in paragraph 16 above, the said M. M. Buist, F. J. Buist and E. J. Bribach did fraudulently, dishonestly, illegally and by unlawful taking and conversion do and commit the following fraudulent, dishonest and illegal acts, to-wit:

"(a) Cancel as a valid outstanding stock certificate, the said capital common stock certificate No. 11 of the defendant corporation owned by O. J. Connell, or the estate of O. J. Connell, deceased, in the amount of 200 shares; did issue the said 200 shares represented thereby to defendants M. M. Buist, F. J. Buist, as evidenced by stock certificate No. 21 and of stub in the stock record book of the defendant corporation; did cause the stock record book of said defendant corporation to show that said transaction took place and happened on April 1, 1947, and to show further that said stock certificate No. 21 was accepted by said M. M. Buist or F. J. Buist on April 1, 1947. That the said stock certificate No. 11 was so cancelled and said stock certificate No. 21 was so issued upon the cancellation of stock certificate No. 11 although the said stock certificate No. 11, *belonging to and being the property of said O. J. Connell or the estate of O. J. Connell, deceased, did not contain an assignment by O. J. Connell to any person but was and is now, in fact blank in all respects and was not delivered by O. J. Connell to any person but was removed from the books, records and papers of said O. J. Connell of the defendant corporation without the knowledge or consent* of said O. J. Connell.

"(b) Cancel as a valid and outstanding stock certificate, the said capital-common stock certificate No. 12 of the defendant corporation owned by O. J. Connell or the estate of O. J. Connell, deceased, in the amount of 48 shares; did issue 45 shares thereof represented thereby to the defendants M. M. Buist or F. J. Buist as evidenced by stock certificate No. 21 and to stock record book stub thereof, of said defendant corporation and the remaining three shares thereof represented thereby to defendant E. J. Bribach as evidence by stock certificate No. 20 and the stock record book stub thereof, of said defendant corporation; did cause the stock record book of said defendant corporation to show that said transaction took place and happened on April 1, 1947, and to show further that said stock certificates No. 21 was accepted by said M. M. Buist or F. J. Buist on April 1, 1947, and said stock certificate No. 20 accepted by the defendant E. J. Bribach on July 31, 1947. That said stock certificate No. 12 was so cancelled and said stock certificate No. 20 and 21 were so issued although the said stock certificate No. 12 was not assigned or delivered to any person by O. J. Connell, but that the assignment form thereon did and does contain the signature of O. J. Connell, in blank, as set out in paragraph No. 15 above; that said assignment form was and is in blank and said stock certificate was removed from the books, records and papers of the said O. J. Connell or of the defendant corporation *without the knowledge or consent of said O. J. Connell.*

"(c) Cancel as a valid outstanding certificate, the said capital common stock certificate No. 13 of the defendant corporation owned by O. J. Connell or the estate of O. J. Connell, deceased, in the amount of 80⅓ shares; did issue the said 80⅓ shares represented thereby to defendant E. J. Bribach as evidence by stock certificate No. 20 of said defendant corporation; did cause the stock record book of said defendant corporation to show that said transaction took place and happened on April 1, 1947, and to show further that said stock certificate No. 20 was accepted by defendant E. J. Bribach on July 31, 1947; that said stock certificate No. 13 was so cancelled and said stock certificate No. 20 was so issued although the said stock certificate No. 13 belonging to O. J. Connell or to the estate of O. J. Connell, deceased, was not assigned or delivered to any person by said O. J. Connell and did not and does not contain an assignment of any kind but the assignment form thereon was and is in blank in all respects and was taken by said defendants M. M. Buist, F. J. Buist and E. J. Bribach, from the files, records, books and papers of said O. J. Connell, or of the defendant corporation *without his consent and either before or after his death.*

"(d) Cancel as a valid outstanding certificate of defendant corporation of capital common stock certificate No. 19 owned by said O. J. Connell or the estate of O. J. Connell, deceased, and held in the name of J. C. Scanlon as nominal holder, in the amount of one share; did issue the said one share of said stock represented thereby to one L. M. Nixon, as evidence by the stock record book of defendant corporation, certificate No. 19; did cause the stock record book of said defendant corporation to show that said transactions took place and happened on April 1, 1947; that the said L. M. Nixon did not and has not accepted said stock certificate No. 19, and that said certificate so remains in the stock record book of said defendant corporation and in the possession of the District Court of Butler County, Kansas; that said stock certificate No. 19, in

addition to having been fraudulently, unlawfully and illegally executed and issued, contains the name of O. J. Connell written thereon as President of defendant corporation and *that said name of O. J. Connell was not written by said O. J. Connell, but by some other person and is a forgery of the signature of said O. J. Connell.*

"That by reason of the allegations above set out said capital common stock assumed the characteristics and protection of such stock had it been stolen, lost or misplaced stock certificates." (Italics supplied.)

Paragraph 18 alleges that certificate No. 19 is in the possession of the district court of Butler county, Kansas; certificate No. 20 is in the possession of E. J. Bribach; and certificate No. 21 is in the possession of M. M. Buist and/or F. J. Buist.

"19. That this plaintiff verily believes that said stock certificates No. 20 and 21, issued as set out in paragraph 17 above, do not contain thereon as to either of them, the signature of O. J. Connell as president of the defendant corporation; that if the name of O. J. Connell does appear thereon, or on either of them, in writing, *then that the said writing of the name of O. J. Connell is not the signature of said O. J. Connell but the writing of some other person.* (Italics supplied.)

"20. That plaintiff does not know and cannot state the time, date or place of the beginning of the conspiracy, as above set out, or the time, date or place of the fraudulent acts alleged and pleaded herein except that plaintiff does set out and allege that all physical acts done by said defendants M. M. Buist, F. J. Buist and E. J. Bribach to affect the illegal, fraudulent and unlawful transfer of stock of defendant corporation as set out in paragraph 17 above were done and consummated by said defendants between December 31, 1946, and May 10, 1948."

Paragraph 21 alleges that a stockholders meeting was called by the defendants on May 10, 1948, at the offices of defendant corporation; that the defendant M. M. Buist, secretary-treasurer of the corporation, orally announced that the records at that time showed the stockholders and stock held by them were as follows: M. M. Buist, 2 shares; M. M. Buist and/or F. J. Buist, 493 shares; F. J. Buist, 1 share; E. J. Bribach, 502 shares; L. M. Nixton, 1 share; O. J. Connell estate, 501 shares; that the purported stockholders meeting was conducted by defendants and the meeting conducted as if they were the owners of said stock, and the purported board of directors was elected, being composed of the defendants herein and others; and that said purported meetings of the stockholders and the board of directors were illegal and unlawful by reason of the facts set forth in paragraph 16 and 17 of the petition hereinbefore set out.

"22. That by reason of the fraudulent, unlawful and illegal acts of the de-

fendants M. M. Buist and F. J. Buist and E. J. Bribach, as individuals and as officers and purported officers of defendant corporation; and by reason of the fraudulent, unlawful and illegal acts of said defendant corporation, the estate of O. J. Connell, deceased, has been fraudulently, illegally and unlawfully deprived of sufficient of the capital common stock of said defendant corporation so as to lose control thereof; that by reason thereof this plaintiff has no adequate remedy at law.

"23. That this plaintiff obtained knowledge, evidence and discovery of all fraudulent and unlawful acts as herein alleged and especially as set out in paragraphs No. 16 and 17 hereof on the 25th day of April, 1949."

Paragraph 24 alleges that no demand was made because it would have been futile.

"25. *That this plaintiff verily believes that said decedent O. J. Connell, had no reason, during his lifetime, to believe said M. M. Buist, or E. J. Bribach to be untrustworthy or dishonest; that this plaintiff had no reason prior to the discovery of the facts as herein alleged to believe said defendants, M. M. Buist, or E. J. Bribach to be untrustworthy.*" (Italics supplied.)

Paragraph 26 of the petition is a prayer for relief by declaring the cancellation of capital common stock certificates No. 11, 12 and 13 to be fraudulent and void; by declaring the issuance of capital common stock certificates No. 20 and 21 to be the result of fraudulent, dishonest, illegal and unlawful acts of the corporation and the defendants named; by declaring the purported meetings of the common stockholders and the board of directors held on May 10, 1948, and all acts and business transacted by them to be null and void; by directing defendants M. M. Buist, F. J. Buist and E. J. Bribach to surrender capital common stock certificates No. 20 and 21; by requiring defendant corporation through its officers to correct the records of the corporation to speak the truth in relation to the shares of capital stock owned by the estate of O. J. Connell, deceased, to be 833⅓ shares; and for an accounting and other relief not material to this appeal.

M. M. Buist and F. J. Buist filed motions to make definite and certain and to strike certain allegations from the petition, which motions were by the court overruled in all particulars except one, and the petition was amended in conformity thereto.

To the petition as amended, appellants M. M. Buist and F. J. Buist filed their separate demurrers setting forth five grounds therefor:

1. That the Court has no jurisdiction of the subject of this action.
2. That the plaintiff has no legal capacity to sue or maintain this action.

3. That there is pending another action for the same cause between the same parties.

4. That several causes of action are improperly joined.

5. That such amended petition does not state facts sufficient to constitute a cause of action.

On November 1, 1949, appellants argued their demurrers confining their arguments to the fifth ground thereof, *i. e.,* that the amended petition does not state facts sufficient to constitute a cause of action. The matter was submitted to the court and taken under advisement until November 14, 1949, at which time the demurrers were overruled by the court.

A careful analysis of appellants' claims of error reveals that in the lower court they relied on the theory that appellee's cause of action was barred by the statute of limitations. For that reason other matters presented here will be disposed of early in this opinion.

As to appellants' claim of error on the court's ruling on their motions to strike and make definite and certain, we have repeatedly held that such motions are addressed to the sound discretion of the trial court and ordinarily refusal to grant them will not be disturbed unless it clearly appears that the trial court's discretion has been abused. A close examination of the motions and the petition discloses that substantial rights of appellants were not affected by such ruling and it cannot be said the trial court abused its discretion. (*Krey v. Schmidt,* and cases cited therein, ante, p. 90, this day decided.)

As to appellants' claim of error on the court's ruling on their demurrer, it is noted that the first three grounds of the demurrer were not presented to the lower court and are neither briefed nor argued in this court, and under our decisions they must be regarded as abandoned. (*Dalton v. Hill,* 169 Kan. 388, 392-3, 219 P. 2d 710, and cases therein cited.)

Appellee challenges appellants' right to be heard on the fourth ground of the demurrer: that *several causes of action were improperly joined.* While appellants raise the question in this court and present oral arguments and briefs thereon, an examination of the record discloses that this ground of the demurrer was not presented nor argued in the lower court. Counsel for appellants argued only matters contained in the fifth ground of the demurrer. We have held that questions not presented to nor considered by the trial court cannot be raised and urged in this court for the first

time. (*Herd v. Chambers,* 155 Kan. 55, 122 P. 2d 734; *In re Estate of Gereke,* 165 Kan. 249, 256, 195 P. 2d 323.)

Appellants' final contention is that the amended petition shows upon its face that the cause of action is barred by the statute of limitations. It is alleged the fraud was committed sometime between December 31, 1946, and May 10, 1948, and this action was begun June 9, 1949. G. S. 1935, 60-306 (3) requires an action to be brought within two years of the discovery of fraud. Appellants further contend that—giving the petition the most liberal construction in favor of appellee—no allegation is made that O. J. Connell did not discover the fraud until within two years of the bringing of this action.

The petition expressly alleges that on December 31, 1946, the records of the corporation disclosed that the original certificates of stock in question stood in the name of O. J. Connell; that on February 13, 1947, O. J. Connell became ill and *incapacitated,* and on that date and at the time of his death August 3, 1947, he was owner of the certificates of stock in question. It further alleges the fiduciary relationship existing between appellants and O. J. Connell; that the original certificates were endorsed in blank by O. J. Connell and delivery thereof was made to no person but that they were removed by appellants from the books, records and papers of O. J. Connell *without his knowledge or consent* and the stock books of the corporation were caused to show that the same were canceled and new certificates issued to appellants and E. J. Bribach on April 1, 1947, without the knowledge or consent of O. J. Connell, and at a time when he was ill and incapacitated; that the purported signature of O. J. Connell, president, on the new certificates purportably issued by these appellants for the corporation was a forgery and not the signature of O. J. Connell but that of some other person; it is further alleged that O. J. Connell had no reason during his lifetime to believe these appellants to be untrustworthy or dishonest, and that the appellee administrator did not discover the fraud until April 25, 1949, less than two months prior to filing the petition herein.

The petition does not allege that the wrongful acts in issuing the new certificates were committed on April 1, 1947, as contended by appellants. It alleges that appellants *caused* the stock record books to show that said cancellation of stock took place on April 1, 1947; however, the petition states that new stock certificates issued

to E. J. Bribach were not delivered and accepted by him until July 31, 1947, well within the two years provided by statute for filing the petition.

Appellants would have us place a strict construction on the pleadings by holding as a matter of law—admitting all the facts set forth in the petition—that O. J. Connell, being president of the corporation and knowing he was owner of the stock in question December 31, 1946, should have discovered the fraud perpetrated by appellants prior to becoming incapacitated on February 13, 1947, or before his death on August 3, 1947. We feel the petition has alleged facts sufficient to toll the statute. Courts will not lightly seize upon some small circumstance or by strict construction when a liberal construction should be made, deny relief to a party plainly shown to have been defrauded against those who defrauded him, on the ground he did not discover that he had been cheated as soon as he might have. Only where a party defrauded would plainly have discovered the fraud except for his own inexcusable inattention, will he be charged with a discovery in advance of actual knowledge on his part. (*Rutherford v. Rideout Bank*, 11 Cal. 2d 479, 80 P. 2d 978, 117 A. L. R. 383.) In view of the fiduciary relationship existing between O. J. Connell and appellants, it cannot be said he owed any obligation to examine the records daily between December 31, 1946, and the date he became incapacitated February 13, 1947, or until the date of his death August 3, 1947.

Appellants contend that the amended petition fails to allege that by the exercise of reasonable diligence O. J. Connell could not have discovered the fraud earlier, and in support of their contention they cite *Malone v. Young*, 148 Kan. 250, 81 P. 2d 23, and *Schulte v. Westborough, Inc.*, 163 Kan. 111, 180 P. 2d 278. This same theory was advanced and given serious consideration, and determined by this court contrary to appellants' contention, in the case of *Dalton v. Hill*, supra, where we said:

"Thus, since we are not here concerned with the sufficiency of evidence, it appears the gist of their claim on this point is that appellee entirely failed to allege in the pleading in question that he could not have discovered the fraud earlier by the exercise of reasonable diligence and therefore failed to state a cause of action.

"They cite *Malone v. Young*, 148 Kan. 250, 81 P. 2d 23; *Preston v. Shields*, 159 Kan. 575, 156 P. 2d 543, and *Schulte v. Westborough, Inc.*, 163 Kan. 111, 180 P. 2d 278, and insist that what is there said and held compels the sustaining of their position. We do not agree. When those decisions are carefully

examined and analyzed the most that can be said for them is that they hold that in such an action a party is required to plead facts which disclose inability to discover the fraud by the exercise of reasonable diligence. Even so, that does not mean, nor can those decisions be construed as intending to hold that the pleading under attack must contain express affirmative allegations of that character. If—as here—it contains an express allegation the fraud relied on was not discovered until within two years from the date of the commencement of the action it is sufficient to withstand an attack by demurrer based upon the ground it fails to state a cause of action unless other facts set forth therein suggest a source from which the fraud could have been discovered earlier. To hold otherwise would disregard the plain language of our civil code stating that a defendant can only demur to a petition on the ground it fails to state a cause of action when that defect appears on its face (G. S. 1935, 60-705) and providing that when it does not so appear upon the face of the pleading the objection may be taken by answer (G. S. 1935, 60-707). It would also wholly ignore the universal rule that as against a demurrer the allegations of a pleading are entitled to the benefit of all reasonable inferences." (pp. 395-6.)

The court sees no reason to reverse or modify its position set out above.

There is sufficient information in the petition to reasonably apprise appellants of the nature of the action. Failure of the appellee to plead additional facts which would have further disclosed his inability to discover the fraud by the exercise of reasonable diligence is neither fatal nor required.

The judgment of the lower court is affirmed in each case.

WEDELL, J. (concurring in part and dissenting in part): O. J. Connell, decedent, was president of the defendant corporation, the principal office of which was located in El Dorado, the city of decedent's residence. As president of the corporation decedent, of course, had the right of access to the stock books of the corporation at all times. The petition alleged decedent became ill and incapacitated on February 13, 1947. It also alleged decedent remained president of the corporation until the date of his death, August 3, 1947. It is alleged the fraudulent acts were performed without decedent's knowledge or consent and that he had no reason to believe those charged with the fraud were untrustworthy.

The mere fact the transfers were not made with decedent's knowledge and consent is not an allegation he did not later acquire such knowledge or that, in the exercise of reasonable diligence, he could not have obtained notice of the fraud thereafter. I fail to find an allegation he did not acquire such knowledge.

As previously stated, however, the petition did allege decedent became ill and incapacitated on February 13, 1947. There is, of course, both physical and mental incapacity and many degrees of each. What the nature or extent of decedent's incapacity may have been is not indicated. However, I find no motion to have the allegation of the petition made more definite and certain by stating the nature or extent of decedent's incapacity. Absent such a motion I shall assume decedent was incapable of exercising reasonably diligent investigation to discover the fraud. On that basis I concur in the order overruling the demurrer to the petition.

I do not, however, concur in various statements of law and intimations in the opinion with respect to what a petition based on the fraud statute (G. S. 1935, 60-306, *Third*) must contain in order to disclose plaintiff's right to maintain an action thereunder. Touching that subject I adhere to the views expressed and based on the authorities cited from this and other jurisdictions in the dissenting opinion in *Dalton v. Hill*, 169 Kan. 388, 396-400, 219 P. 2d 710. For the importance of allegations disclosing exercise of reasonable diligence in the discovery of alleged fraud, see, also, emphasis placed on such allegations in *Dalton v. Lawrence National Bank*, 169 Kan. 401, 412-414, 219 P. 2d 719, decided on the same date as *Dalton v. Hill*, supra.

The rule laid down in the decisions referred to is not a technical one in any sense. It is based on sound doctrine and tends to promote justice and fair dealings between men where belated actions based on fraud are filed long after material evidence may be lost and important witnesses no longer may be available. The rule merely requires that a person relying upon a belated discovery of fraud can no longer allege only ignorance of the fraud but must allege facts disclosing such fraud, in the exercise of reasonable diligence, could not have been discovered earlier than two years before the action was instituted.

The fraud statute was early recognized by this and most other courts as an exception to the general rule that a cause of action accrues on the date a wrongful act, or acts, are committed. Persons relying on the exception provided by the statute are required to bring themselves within it in order to maintain the action. Although the early decisions of this and some other courts were that it was sufficient merely to plead earlier ignorance of the fraud than the date alleged the majority of the courts are now committed to

the sounder doctrine that in order to maintain such an action facts must be pleaded to show the fraud, in the exercise of reasonable diligence, could not have been discovered earlier than two years before the action was filed. (*Schulte v. Westborough, Inc.*, 163 Kan. 111, 180 P. 2d 278, 172 A. L. R. 259.) See exhaustive annotation following the Schulte case in 172 A. L. R. 265.

If a good cause of action can be stated without alleging facts disclosing such diligence then obviously proof of such diligence by a plaintiff is likewise unnecessary to support a judgment. Such an interpretation, in my opinion, violates the true intent and purpose of the statute.