No. 43,326

L. W. REXROAD and JAY M. REXROAD, d/b/a L. W. Rexroad and Son, *Appellees* and *Cross Appellants,* v. THE KANSAS POWER AND LIGHT COMPANY, a Corporation, *Appellant* and *Cross Appellee.*

(388 P. 2d 832)

Opinion filed January 25, 1964.

*William B. McElhenny,* of Topeka, argued the cause, and *Robert L. Webb, Ralph W. Oman, Philip E. Buzick, James D. Waugh, James L. Grimes, Jr.* and *Donald J. Horttor,* all of Topeka, and *E. S. Hampton, H. H. Dunham, Jr., John Q. Royce, Howard Engleman* and *C. Stanley Nelson,* all of Salina, were with him on the brief for the appellant and cross appellee.

*Thomas M. Lillard, Jr.,* of Salina, argued the cause, and *C. L. Clark, James P. Mize* and *James T. Graves,* all of Salina, were with him on the brief for the appellees and cross appellants.

The opinion of the court was delivered by

SCHROEDER, J.: This is a negligence action arising out of a fire started when the plaintiffs' bulldozer severed a high pressure gas transmission line connection of the Kansas Power and Light Company (defendant-appellant-cross appellee) while doing certain street improvement work in the city of Assaria, Kansas. The bulldozer was a total loss as a result of the fire and a nearby house and its contents were consumed. Plaintiffs seek to recover for the bulldozer and for amounts which they were adjudged liable to pay in connection with the loss of the house and contents. The defendant cross-claimed for loss of a gas town border station and equipment and a quantity of natural gas.

The case was tried to a jury which returned a verdict for less than half the sum sought. The trial court granted a motion for a new trial on the question of damages only. Appeal has been duly perfected by each of the parties from various orders of the trial court presenting the issues hereinafter discussed.

On the 31st day of August, 1961, L. W. Rexroad and Jay M. Rexroad, d/b/a L. W. Rexroad and Son (plaintiffs-appellees-cross appellants), hereafter referred to as Rexroad, entered into a written street improvement contract with the city of Assaria, Kansas. The contract called for the grading, curbing and guttering of certain streets in the city. Work under the contract was commenced on or about October 1, 1951. At about this same time L. W. Rexroad went to the Salina office of the Kansas Power and Light Company and there obtained a sketch map showing the general location of its gas transmission and distribution lines within the city of Assaria. The Kansas Power and Light Company had a franchise to serve gas within the city of Assaria and had transmission lines running through the city in addition to its distribution system. The map was not complete in that it did not show dimensions, depths or many other details. Rexroad did not rely on the map and the jury so found.

The Kansas Power and Light Company's high pressure transmission lines were located in or near Railroad Avenue, a north-south street on the eastern edge of the city. It had a 6-inch gas

transmission line running north and south along the eastern edge of Railroad Avenue, being between the edge of the street and the railroad right of way adjacent on the east. The Kansas Power and Light Company also had an 8-inch gas transmission line running north and south approximately in the center of Railroad Avenue. These two transmission lines were installed in 1928. There were connections or taps running from each of these transmission lines into a gas town border station on the west curbing of Railroad Avenue in the block in which the accident occurred. This town border station was the point from which gas service was provided to the town. From there the gas was piped to the low pressure distribution system in the town.

The map showed a 2-inch connection from the high pressure 6-inch main to the gas border station on Railroad Avenue, but no such connection was shown on the 8-inch high pressure gas main. It was this undisclosed 2-inch connection from the 8-inch high pressure gas main that was struck by the bulldozer of Rexroad on February 2, 1952, causing all the damage involved in this case.

The portion of the line struck by the bulldozer was a 2-inch pipe rising vertically 13 inches from the top of the 8-inch main and then back in a "U" shape to the level of the 8-inch pipe and then turning in a southwesterly direction to a connection in the town border station. The loop as just described had threaded fittings to compensate for expansion and contraction of the line. The 13-inch riser would have extended 2 inches above the top of the valley gutter to be constructed by Rexroad at that point. This valley gutter was clearly shown on the plans previously left with the office of the Kansas Power and Light Company so that such hazards could be called to the attention of Rexroad, but the riser and the 2-inch connecting pipe were not shown on the map.

A 6-inch high pressure main was known to be adequate to serve a town the size of Assaria.

The construction crew of the Kansas Power and Light Company was asked to and did lower the 6-inch high pressure line at the request of the resident engineer of the city, James A. Newberry, because it was in the area where Rexroad was to construct a catch basin to catch the water from the valley gutter under which the 2-inch pipe was later found to rise 13 inches from the 8-inch high pressure line. Other changes were requested but no request for alteration or change was made concerning the 8-inch line, it being

thought the 8-inch line was far enough out in the street to avoid interference. Upon completion of the work by the Kansas Power and Light Company's employees, its foreman told the employees of Rexroad the area had been cleared so that work could safely proceed. No disclosure was ever made of the presence of the 13-inch riser until it was struck by the bulldozer.

There was testimony that the minimum safe depth at which such high pressure lines should be buried was 24 inches from the surface of the ground to the top of the pipe, and that where there is a possibility of the ground being worked, either by grading or plowing or any form of earth moving, it should be buried at a depth of 3 feet. The testimony was that the minimum safe depth for the burial of the 2-inch riser in question was the same as for the 8-inch pipe itself, in that it also contained gas under high pressure the same as the 8-inch line. There was also testimony to indicate that it was not necessary that such riser be vertical, that it could be horizontal and still serve the same purpose, and the safer practice was to have it horizontal rather than vertical.

As a further precaution, because of the great hazard of the high pressure gas pipelines, two employees of Rexroad went ahead of the bulldozer with "sharpshooter" shovels as excavation was being done in front of the gas town border station, probing the ground to be sure no pipes were in the path. While proceeding north on the western side of Railroad Avenue, the right or eastern edge of the bulldozer blade struck the hidden riser or expansion loop which extended upward on the 8-inch main bending it sufficiently to sever the connection. A fire immediately broke out. It completely consumed the bulldozer, the town border station of the Kansas Power and Light Company and a nearby house belonging to one Anna Anderson and her daughter, Jo Ann Brewer.

On January 14, 1953, Anna Anderson and Jo Ann Brewer filed an action against Rexroad for the replacement cost of their house and contents and the loss of use, suing as third party beneficiaries of the aforesaid contract between the city of Assaria and Rexroad. The Kansas Power and Light Company was not a party to that action, nor was it ever asked to participate in the defense thereof. Four months after the filing of the *Anderson* case, and on May 26, 1953, Rexroad sued the Kansas Power and Light Company in tort, seeking damages only for the loss of the bulldozer. While the action for the bulldozer was pending, the *Anderson* case made three trips to the Supreme Court. (*Anderson v. Rexroad*, 175 Kan. 676, 266 P. 2d

320; 178 Kan. 227, 284 P. 2d 1077; and 180 Kan. 505, 306 P. 2d 137.) Judgment was finally affirmed in favor of the plaintiffs and against Rexroad in the contract case.

It was stipulated by the parties that Rexroad did in fact pay to Anderson and Brewer $7,075, which included $2,275 for loss of use and $4,800 for the property destroyed, all as required by the final decision of this court upon appeal from the trial of the case.

Trial of the instant action was continued repeatedly awaiting the outcome of the *Anderson* case. That decision did not become final until January 12, 1957. Approximately thirty days later on February 13, 1957, Rexroad filed a written application for permission to file an amended and supplemental petition. It fully alleged the facts concerning the *Anderson* case and further alleged the damages sustained in the amount of the judgment, including costs and attorneys' fees (Loss of house, $3,800, loss of furniture and contents $1,000, loss of use $2,275, totaling $7,075; and costs, expenses and attorneys' fees totaling $3,317.46) were a proximate result of the negligence of the Kansas Power and Light Company. On April 28, 1960, the application was granted in part giving Rexroad the right to file an amended and supplemental petition stating the facts and include as an additional claim the amount of the judgment in the *Anderson* case, but the trial court denied Rexroad the right to include costs, expenses and attorneys' fees.

Prior to the introduction of evidence in this case the trial court further limited this claim of Rexroad to $4,800, representing the loss of the Anderson house and contents. For the loss of the bulldozer Rexroad sought to recover $14,000 in this action.

The jury found for Rexroad in the sum of $4,800 without any explanation as to how the amount was determined. In answer to special questions the jury found the Kansas Power and Light Company's only act of negligence to be the following: "By not maintaining the swing connection at a safe depth."

The jury found generally against the Kansas Power and Light Company on its cross petition for loss of its town border station and a quantity of gas.

Various post-trial motions were filed, all of which were overruled, except the motion for a new trial which the trial court granted, limiting the new trial to the question of damages only.

The first question presented is whether the trial court erred in permitting Rexroad to file and recover under an amended and supplemental petition.

The Kansas Power and Light Company contends the trial court abused the exercise of its power of discretion in permitting Rexroad to amend and supplement the petition by "tacking on" the claim for amounts which Rexroad had been adjudged liable in the *Anderson* case; that it erred in failing to sustain the Kansas Power and Light Company's motion to strike such allegations from the amended petition, or, in the alternative, in failing to sustain a demurrer thereto.

It is claimed the amendment substantially changed the claim of the original petition, was not in furtherance of justice within the meaning of G. S. 1949, 60-759, and should therefore not have been allowed.

The original petition stated a cause of action in tort for damages against the Kansas Power and Light Company growing out of the loss of a bulldozer. It is claimed Rexroad by the amendment sought to place the Kansas Power and Light Company in the position of an indemnitor by demanding of it the amount of the judgment, court costs, attorneys' fees and expenses incurred by Rexroad in an independent action by an injured third party. It is charged that the substance of the new claim was more than just a claim for additional damages, but was in reality a new cause of action based upon an implied contract of indemnity. Otherwise, it is argued, there could be no claim for attorneys' fees, costs and other expenses. It is argued that such elements of damage would not be recoverable in the ordinary tort action as pleaded in Rexroad's original petition, nor in an action by Anderson against the Kansas Power and Light Company. (Citing, 15 Am. Jur., Damages, § 142, p. 550.)

The moving cause of the damage to Rexroad alleged in the petition was *the negligence* of the Kansas Power and Light Company in not maintaining its high pressure gas line at a sufficient depth. Before the damage to Rexroad becomes material, viewing the action at the pleading stage, it must be established that the Kansas Power and Light Company was negligent. In the original petition as filed, Rexroad claimed damage for the loss of a bulldozer, and by the amended and supplemental petition he made an additional claim for the money paid as a result of the *Anderson* action.

The Kansas Power and Light Company attempts to confuse the issue by switching from the contract action to a negligence action. It was unnecessary for Rexroad to notify the Kansas Power and

Light Company of the action against it by the plaintiffs in the *Anderson* case, because that action was based entirely upon the contract between Rexroad and the city of Assaria. As a result of litigation it was determined that the plaintiffs in the *Anderson* action were third party beneficiaries of such contract and entitled to recover. It was strictly a contract action which had nothing to do with the negligence of the Kansas Power and Light Company. The Kansas Power and Light Company was not a party to the contract involved in that action, and was not entitled to notice or the right to defend. The issue of negligence was immaterial in the contract action.

We need not be concerned whether the pleading under attack stands or falls as an amended petition under the provisions of G. S. 1949, 60-759. It comes within the provisions of G. S. 1949, 60-764, which permit the filing of a supplemental petition. This statute provides:

"Either party may be allowed, on notice, and on such terms, as to costs, as the court or judge may prescribe, to file a supplemental petition, answer or reply, alleging facts material to the case, occurring after the former petition, answer or reply."

The trial court permitted Rexroad to file a supplemental petition after notice and hearing. The additional claim alleged facts material to the case which occurred after the former petition had been filed. While the loss of the house and contents for which suit was brought against Rexroad occurred at the time of the initial fire and explosion, which is the basis of this lawsuit, Rexroad was not connected in any way with that property until it was ultimately determined by this court that liability accrued by reason of the contract which Rexroad had with the city of Assaria.

The question next posed is whether the statute of limitations has run on the additional claim asserted by Rexroad in the amended and supplemental petition.

No Kansas cases have been found to be directly in point on the facts here presented, but a few are analogous. In substance, they involve the execution of a contract as a result of the fraudulent misrepresentations of another, a suit by the defrauded party on that contract, and a subsequent tort action by the contracting party held liable against the perpetrator of the fraud to recover the amount of the judgment in the first case. (*Bank v. Williams*, 62 Kan. 431, 63 Pac. 744; *McOsker v. Federal Insurance Co.*, 115 Kan. 626, 224 Pac. 53; and *Bank v. Bank*, 116 Kan. 530, 227 Pac. 365.)

In *Bank v. Bank,* supra, an agent employed for the handling and recording of a mortgage, who was compelled to pay a loss caused by the negligence of a subagent in failing to have the mortgage recorded, was entitled to recover such loss from his subagent. It was said the statute of limitations did not begin to run on the subsequent tort action until the plaintiff was required to pay the judgment in the first action.

A similar case upheld on the theory of indemnity arose in the state of Missouri in *City of Springfield v. Clement et al.,* 205 Mo. App. 114, 225 S. W. 120. The court there held where a person constructively negligent is compelled to pay a judgment on account of the primary negligence of another, the statute of limitations does not begin to run against his right of action to recover indemnity until the date of the payment of the judgment, when the cause of action first accrues.

Applying the rule above stated in *Bank v. Bank,* supra, if Rexroad had not lost the bulldozer, for which he originally brought suit, in the same fire which destroyed the house, he could have waited until after his damage was fully established in the *Anderson* case, and then filed suit against the Kansas Power and Light Company to recover. Prior to the trial and the third appeal of the *Anderson* case to the Supreme Court, the liability of Rexroad in the *Anderson* action could not have been ascertained with any degree of certainty.

On the facts in this case we hold the statute of limitations did not begin to run against Rexroad on the additional claim set up in the amended and supplemental petition until he was required to pay the Anderson judgment. Application was made to file the amended and supplemental petition approximately thirty days after the Anderson judgment became final, and by reason thereof we hold the additional claim is not barred.

In the fraud cases above cited (*Bank v. Williams,* supra; and *McOsker v. Federal Insurance Co.,* supra) attorneys' fees and expenses were recoverable as compensatory damages in addition to the amount of the judgment and costs. In those cases, however, the loss was sustained through *fraud.* In the instant action we are not concerned with fraud, and while the amended and supplemental petition has some of the characteristics of indemnity, it does not clearly fall within this classification.

In *Fenly v. Revell,* 170 Kan. 705, 228 P. 2d 905, it was said after the citation and discussion of many authorities:

". . . all the authorities now recognize that the doctrine of subrogation may be invoked in favor of persons who are legally obligated to make good a loss caused by the negligence or tortious acts of another. . . ." (p. 709.)

Further in the opinion the court said that legal subrogation did not depend upon contract or assignment, but followed as the legal consequence of the acts and relationship of the parties.

Syllabus ¶ 2 in *United States Fidelity & Guaranty Co. v. Maryland Cas. Co.,* 186 Kan. 637, 352 P. 2d 70, reads:

" 'Legal' subrogation is grounded in equity and arises by operation of law. But no general rule can be laid down which will determine all cases for application of the doctrine. Whether or not it is applicable depends on the facts and circumstances of each particular case as it arises, but ordinarily the remedy is broad enough to include every instance in which one person, not a mere volunteer, pays a debt for which another is primarily liable and which in equity and good conscience should have been discharged by the latter."

Strict adherence to the doctrine of subrogation would permit Rexroad, on the additional claim in the instant action, to recover only so much as Anderson and Brewer would have been permitted to recover in a negligence action against the Kansas Power and Light Company for the destruction of their home. It must also be observed that resolving the issue of Rexroad's liability on the contract in the *Anderson* case was personal to Rexroad, in that his contract with the city of Assaria made him liable for all damages to buildings or other property located outside of the construction limits. (See, *Anderson v. Rexroad,* 180 Kan. 505, 507, 306 P. 2d 137.) We hold that it would be improper in the instant action, sounding in tort, to permit Rexroad to recover expenses and attorneys' fees incurred as a result of the *Anderson* action against the Kansas Power and Light Company. To this extent the trial court was correct; but it was unduly restrictive in its order made prior to the trial which permitted Rexroad to show only $4,800 damages as a result of the *Anderson* action. On this point we hold the trial court should have permitted Rexroad to go to the jury on the additional claim to the extent of the judgment, including costs, which Rexroad was held liable to pay in the *Anderson* case. ($7,075 plus costs.)

The Kansas Power and Light Company contends the trial court erred in failing to render judgment in its favor notwithstanding the general verdict.

Pertinent findings made by the jury are as follows:

"Question 4: Did the plaintiffs use reasonable care, considering the danger involved, to locate the high pressure line or lines in Railroad Avenue prior to their excavation work on February 2, 1952? Answer: Yes.

"Question 10: Do you find the defendant KP&L was guilty of any negligence which was the proximate cause of the accident of February 2, 1952? Answer: Yes.

"Question 10a: If so, of what did such negligence consist? Answer: By not maintaining the swing connection at a safe depth.

"Question 11: Do you find the plaintiffs were guilty of any negligence which was the proximate cause of the accident of February 2, 1952? Answer: No."

The Kansas Power and Light Company moved to set aside the verdict and answers to special questions, "for the reason that said answers to special questions are not supported by the evidence, are contrary to the evidence and are inconsistent."

The Kansas Power and Light Company in its brief contends the answer to question No. 10a acquitted it of each and every allegation of negligence set forth in the petition.

This is raised for the first time on appeal. It has frequently been held that appellate review is limited to the issues and questions presented to the trial court, and the Supreme Court will not arbitrarily determine issues raised for the first time on appeal. (*Connell v. Saco Oil Co.,* 170 Kan. 91, 223 P. 2d 1020; *Tucker v. Hankey,* 173 Kan. 593, 250 P. 2d 784; and *Norris v. Nitsch,* 183 Kan. 86, 325 P. 2d 326.)

Wholly aside from the foregoing, it may be stated the entire theory of the petition was that the Kansas Power and Light Company had not installed and maintained the "goose-neck" or "swing" pipe connection at a safe depth, and had failed to notify Rexroad of its location in relation to the work to be done by Rexroad in that area. The finding of the jury by its answer to question No. 10a was a positive finding to support the general theory of the petition on the issue of the Kansas Power and Light Company's negligence. It has frequently been held that such findings are to be construed liberally with a view to ascertaining the intention of the jury. (*Coryell v. Edens,* 158 Kan. 771, 150 P. 2d 341; and *Morrison v. Hawkeye Casualty Co.,* 168 Kan. 303, 311, 212 P. 2d 633.

Evidence presented by the parties to this action was conflicting. Therefore, the facts heretofore related have been stated most favorably to Rexroad in view of the specific finding of the jury on the issue of negligence, and the disposition of the case made on appellate review.

Rexroad contends the trial court erred in denying a motion to strike all reference to insurance coverage on the bulldozer de-

stroyed from the answer of the Kansas Power and Light Company.

Paragraph No. 9 of the Kansas Power and Light Company's answer alleged that plaintiffs were not the real parties in interest for the reason that they had been fully compensated for the loss of their bulldozer by a named insurance company, and that plaintiffs, therefore, had no right to maintain this action.

Thereafter, the plaintiffs filed a motion to strike paragraph No. 9 of the answer "for the reason that . . . defendant is fully advised that plaintiffs have a substantial beneficial interest in this litigation over and above the subrogation interest that may exist in favor of any insurance carrier." An affidavit was filed by the plaintiffs in support of this motion at the time of the oral argument, but the court denied the motion. The point was again urged by counsel for the plaintiffs at the pretrial conference, but the trial court held it was a proper defense and evidence would be permitted on the point. It is disclosed that the plaintiffs had insurance coverage on the bulldozer for all but $250. Rexroad was paid $10,400 by the insurance company, thus indicating a total loss of $10,650 for the bulldozer. An expert witness testified the bulldozer was worth $11,000.

By permitting paragraph No. 9 to stand, insurance was injected into the case. It is apparent upon examining the amount of the verdict that the jury failed to compensate Rexroad for the bulldozer, returning a verdict of only $4,800. This represented the value of the house and contents paid by Rexroad to Anderson and Brewer as stipulated by the parties. (As heretofore stated the trial court limited the amount of recovery to $4,800 on the additional claim by an order entered prior to the trial.)

It is well settled that the damages recoverable for a wrong are not diminished by the fact that the party injured has been wholly or partly indemnified for his loss by insurance effected by him, and to the procurement of which the wrongdoer did not contribute. This rule is not affected by the fact that the insurer is entitled to be subrogated to the rights of the insured, as against the tortfeasor, or to recover back from him the amount he recovers. The question of the right to the proceeds of the recovery is a matter between the insurer and the insured. It constitutes no defense to the action for damages caused by the wrong, which must be brought in the name of the insured, although it might be for the use of the insurer. The reasons generally given for the rule are that the contract of insur-

ance and the subsequent conduct of the insurer and insured in relation thereto are matters with which the wrongdoer has no concern and which do not affect the measure of his liability. (15 Am. Jur., Damages, § 201, pp. 617, 618.)

This has no bearing on the right of a defendant to raise the defense of "real party in interest," but once it has been shown that the plaintiff is a real party in interest, the defendant has no further right to bring insurance into the case.

It has been repeatedly held that a plaintiff cannot deliberately inject into a damage suit the fact that the defendant has liability insurance. (See, *Caylor v. Atchison, T. & S. F. Rly. Co.,* 189 Kan. 210, 368 P. 2d 281; and cases cited in both the court and dissenting opinions.)

It is apparent the reason for the rule—that knowledge of the insurance of a defendant will incline the jury toward the case of the plaintiff—has application in reverse. Once it has been established that the plaintiff is a real party in interest, the trial court should exclude evidence of insurance from the case.

In the instant action Rexroad raised the point at every possible opportunity, and we hold the trial court erred when it permitted the insurance issue to stay in the case. This is emphasized by the fact that the jury failed to include the value of the insured bulldozer in the amount of the verdict.

This court has consistently ruled that an insured who has not been fully compensated for his loss can bring an action against the negligent party in his own name, for his own use, and for the benefit of the insurance carrier. (*Clark v. Missouri Pac. Rld. Co.,* 134 Kan. 769, 8 P. 2d 359.)

The Kansas Power and Light Company contends the trial court erred in granting a new trial on the question of plaintiffs' damages alone. Rexroad, on the other hand, contends the court should have granted plaintiffs' alternative motion for judgment in the amount of $15,450, notwithstanding the verdict.

The trial court sustained Rexroad's motion for a new trial, limited to the question of damage only.

G. S. 1949, 60-3004, gives the trial court a discretionary power to grant a new trial limited to a single issue, provided the issues involved in the action are separable.

Each of the parties herein relies upon *Henderson v. Kansas Power & Light Co.,* 188 Kan. 283, 362 P. 2d 60. The court there said:

"In considering the question presented, several elementary and firmly-established rules are to be kept in mind. One is that ordinarily the granting or denial of a new trial rests in the sound discretion of the trial court and a ruling thereon will not be disturbed, absent a showing of abuse of discretion or other manifest error. Another is that until the contrary is shown, a jury is presumed to have acted fairly, reasonably, intelligently and in harmony with the evidence. Still another is that the same yardstick must be applied where the claim is that a verdict is inadequate as in a case where a verdict is claimed to be excessive, and before a new trial will be granted because of the size of a verdict it must appear to be so excessive or inadequate, as the case may be, as to have been given under the influence of passion and prejudice. A still further rule is that a new trial can be granted on one of several issues, such as plaintiff seeks here—on the question of damages only (G. S. 1949, 60-3004). It is equally well settled that *in the determination of matters of this kind, involving personal injuries, there is no precise formula by which courts can be guided,* and that each case must largely be governed by its own facts as established by the evidence." (p. 289.) (Emphasis added.)

Further in the opinion the court said:

"Concededly, negligence and damages are legally separable issues, and on many occasions this court has granted new trials on the issue of damages alone. We believe, however, that the rule stated in the annotation 'New Trial As To Damages Only,' 29 A. L. R. 2d 1199, where at § 10, p. 1214, it is said:

"'A new trial as to damages alone should not be granted where there is ground for a strong suspicion that the jury awarded inadequate damages to the plaintiff as a result of a compromise involving the question of liability. Or, as is said in 98 A. L. R. 944, if from the inadequacy of the damages awarded, in view of the evidence on the subject, or the conflict of the evidence upon the question of liability, or from other circumstances, the plain inference may be drawn that the verdict is the result of a compromise, such error taints the entire verdict, and a new trial should be ordered upon all issues.'

is applicable to the situation here presented." (p. 291.)

It is unnecessary to delve further into the cases on this point. Admittedly, the question presented in the instant case is rather close. The majority of the members of the court are of the opinion that the jury has fully determined the question of negligence, and that the award of inadequate damages is not the result of a compromise involving the question of liability.

Rexroad argues there was no offer of evidence by the Kansas Power and Light Company as to any part of the damages claimed by them, and contends this is a complete acquiescence in the accuracy and reasonableness of the damages claimed. Thus, it is argued, the evidence of the plaintiffs stands unimpeached and uncontradicted at $15,450 of which $4,800 is for the payment to Anderson and Brewer and $10,650 for the destruction of the bulldozer. They argue the jury had no choice as to damages. There

was only one set of figures to consider. Rexroad relies on *Kansas Wheat Growers Ass'n v. Smith*, 127 Kan. 267, 273 Pac. 437.

Actually, there was evidence that the bulldozer was of greater value than the amount for which the insurance company settled. Here it cannot be said that no controversy existed as to the amount of recovery as was true, for example, in the case of *Kansas Wheat Growers Ass'n v. Smith*, supra. It is therefore held the trial court did not err in ordering a new trial on the issue of damages, and the motion of plaintiffs for judgment notwithstanding the general verdict was properly overruled.

Other matters presented in the briefs have been considered but are rejected as having no merit.

The judgment of the lower court is affirmed as to all issues raised by the parties, except the pretrial order unduly restricting Rexroad by denying him the right to show the full amount of the judgment and costs in the *Anderson* case, and the order refusing to strike the issue of insurance from the answer of the Kansas Power and Light Company, as to which the judgment is reversed with directions to proceed in accordance with the rulings heretofore made in this opinion.

SCHROEDER, J., dissenting: I respectfully dissent from that portion of the opinion which grants Rexroad a new trial on the issue of damages only. In my opinion the jury failed to follow instructions which were clearly given to it concerning damages, and permitted the insurance issue which remained in the case to influence its decision. Under the circumstances it cannot be said the jury determined the issue of negligence without compromise.

It is generally stated that while, concededly, negligence and damages are legally separable issues, yet where there is a strong suspicion that the jury may have awarded inadequate damages as a result of a compromise involving the question of liability, such an order should not be made.

I respectfully submit the judgment of the lower court should be reversed and a new trial should be granted on all issues.

PARKER, C. J., and PRICE, J., join in the foregoing dissent.

FATZER, J., concurring in part and dissenting in part: I concur in that portion of the majority opinion which grants Rexroad a new trial on the issues of damages only, and in reversing the pre-trial

order restricting Rexroad from showing the full amount of the judgment and costs in the Anderson case, and in striking the issue of insurance from the answer of the Kansas Power & Light Company (KPL). I dissent, however, from that portion of the majority opinion which denies Rexroad the right to recover attorneys' fees in the amount of $3,317.46 expended by him in defending the Anderson suit. I shall briefly state my reasons.

Where, as here, negligence is established it imposes liability for all the injurious consequences that flow therefrom, whatever they are, until the intervention of some diverting force that makes the injury its own, or until the force set in motion by the negligent act has so far spent itself as to be too small for the law's notice. (Sutherland on Damages, Vol. 1, Fourth Edition, § 16, p. 53.) On the question of what is negligence, it is material to consider what a prudent man might reasonably have anticipated, but when negligence is once established, as here, that consideration is entirely immaterial on the question of how far that negligence imposes liability. Generally speaking, the law defines the scope of responsibility for consequences which limit the recovery of damages to those which *naturally* and *proximately* result from the act complained of; or, in other words, to those consequences of which the act complained of is the natural and proximate cause. It is well settled in this jurisdiction that one who commits a tortuous act is liable for the injury and loss that are the natural and probable result of his wrongful act. (*Hoge v. Norton,* 22 Kan. 374; *Enlow v. Hawkins,* 71 Kan. 633, 81 Pac. 189; *Bank v. Robbins,* 71 Kan. 748, 81 Pac. 487, 114 Am. St. 523; *Billups v. American Surety Co.,* 173 Kan. 646, 251 P. 2d 237; *Foster v. Humburg,* 180 Kan. 64, 299 P. 2d 46; *Ablah v. Eyman,* 188 Kan. 665, 676, 365 P. 2d 181, 90 A. L. R. 2d 766.)

As a result of KPL's negligent act, two parties sustained damage: Rexroad's bulldozer was destroyed and Anderson's home was burned to the ground and the contents were destroyed by the same fire. Previous to the fire, Rexroad, as a general contractor, entered into a written contract with the city of Assaria to make street improvements and to be liable for all damages to buildings or other property, and at his own expense to repair, replace or reconstruct such property or otherwise make amicable settlement for such damage. As a result of that third party beneficiary contract, Anderson could pursue two remedies: sue KPL for its negligence in destroying the home and contents, or sue Rexroad on its contract with the city.

Anderson chose the less expensive and "more sure" lawsuit and sued Rexroad on his third party beneficiary contract with the city. That suit was vigorously defended by Rexroad, which defense inured to the benefit of the tort-feasor, KPL. Had Anderson sued KPL for its negligence in destroying her home rather than Rexroad, KPL would have had to defend the suit and would have incurred attorneys' fees and expenses in making its defense. As a result of Anderson's suit against Rexroad, he was required to pay the full amount of the judgment recovered by Anderson and costs of the action together with attorneys' fees incurred in defending the suit. The damages sought to be recovered in the case at bar are clearly compensatory and in my judgment are the natural and probable consequences flowing from KPL's negligent act. In Sutherland on Damages, supra, § 58, pp. 224, 225, the rule is stated:

"If one's property is taken, injured or put in jeopardy by another's neglect of duty imposed by contract or by his wrongful act any necessary expense incurred for its recovery, repair or protection is an element of the injury. It is often the legal duty of the injured party to incur such expense to prevent or limit the damages; and if it is judicious and made in good faith it is recoverable though abortive."

Anderson's suit against Rexroad was based on contract. His negligence, which the jury found did not exist, had nothing to do with that case. However, he was obliged to defend that action to prevent or limit the damage, and he necessarily incurred attorneys' fees in doing so. No claim is made that the fees were not judicious or incurred in good faith, or that they were excessive. Under the rule above stated, they were necessary expenses incurred by Rexroad and were an element of the injury. They are not remote or uncertain but are the natural or probable result of KPL's tortuous act. This item of damage was alleged in the supplemental petition and denied. It is one of the points specified in the cross-appeal. Accordingly, I would reverse the order of the district court disallowing Rexroad's claim for attorneys' fees necessarily incurred in defending the Anderson case. (*Bank v. Williams,* 62 Kan. 431, 63 Pac. 744; *Bank v. Robbins,* 71 Kan. 748, 81 Pac. 487, 114 Am. St. 523; *Parish v. Brokerage Co.,* 92 Kan. 286, 289, 140 Pac. 835, Annotated Cases, 1916 B, 981.)