KING GRAIN COMPANY, Plaintiff,

v.

CALDWELL MANUFACTURING COMPANY, A DIVISION OF CHIEF INDUSTRIES, INC., and Canamer International Inc., Defendants.

Civ. A. No. 89–1603–FGT.

United States District Court,
D. Kansas.

April 22, 1993.

Wyatt Wright, Foulston & Siefkin, Wichita, KS, for King Grain Co.

Dennis L. Gillen, Depew, Gillen & Rathbun, Wichita, KS, for Caldwell Manufacturing Co.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This is a negligence and breach of warranty action. The defendants, Caldwell Manufacturing Company ("Caldwell") and Canamer International, Inc. ("Canamer"), provided an aeration system for a grain storage facility owned by the plaintiff, King Grain Company ("King"). King alleges that as a result of negligence, the aeration system failed, and a large amount of grain spoiled, causing damages to King in the amount of $425,000. King further alleges that the failure of the system constitutes a breach of implied and express warranties. Defendant Canamer has been dismissed from this action.

King owned a temporary grain storage facility, which required the use of an aeration system, consisting of a number of fans, and a tarp system to prevent moisture damage to stored grain. The tarps were provided by Canamer, and the fans were provided by defendant Caldwell. King claims that defendant designed the aeration system, but Caldwell contends that it merely provided the materials according to King's specifications.

In October and November 1986, a number of farmers deposited grain in King's temporary storage facility. The grain was forfeited to the Commodity Credit Corporation ("CCC") in August or September 1987. King purchased 324,327.5 bushels of the grain on May 31, 1988, and the remaining 1,276,300.48 bushels on July 6, 1988. In the middle of July 1988, King discovered that some of the grain had spoiled due to significant accumulations of water at the bottom of the storage unit. It is unclear when or precisely how the water entered the storage facility, but King admits that it cannot prove the spoilage occurred after King purchased the grain from the CCC. Upon discovering the damage, King moved the undamaged grain to prevent further spoilage.

Plaintiff was insured under a policy with Old Republic Insurance Company ("Old Republic"), but there was a dispute as to coverage. Plaintiff and Old Republic settled the dispute for $150,000. The proceeds were paid to Wells Fargo Ag Credit Corporation ("WFAC") as part of an agreement for forgiveness of debt that plaintiff owed WFAC.

This matter is before the court on defendant Caldwell's motion for summary judgment. (Doc. 71). The defendant argues therein that King is not the real party in interest. The defendant further argues that King cannot prove any damages because the grain spoilage led to benefits that outweigh any damages King incurred.

The standards governing the consideration of a motion for summary judgment are clearly established. The Federal Rules of Civil Procedure provide that summary judgment is appropriate when the documentary evidence filed with the motion "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

■ The burden at the summary judgment stage is similar to the burden of proof at trial. The court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact on its claim(s). Rule 56, however, imposes no requirement on the moving party to "support

its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323, 106 S.Ct. at 2553 (emphasis in original). Once the moving party has properly supported its motion for summary judgment, the nonmoving party may not rest upon mere allegations or denials, but must set forth specific facts showing a genuine issue for trial, relying upon the types of evidentiary materials contemplated by Rule 56. Fed.R.Civ.P. 56(e). Each party must demonstrate to the court the existence of contested facts on each claim it will have to prove at trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. The court reviews the evidence on summary judgment under the substantive law and based on the evidentiary burden the party will face at trial on the particular claim. *Anderson*, 477 U.S. at 254, 106 S.Ct. at 2513.

## I. Real Party in Interest

Defendant argues that this action should be dismissed because plaintiff is not the real party in interest under Federal Rule of Civil Procedure 17(a). Rule 17(a) provides:

**Real Party In Interest.** Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought; ... No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of the commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

■ The controlling question under Rule 17(a) is whether the plaintiff has a substantive right that is enforceable under the applicable law. *See Whelan v. Abell*, 953 F.2d 663, 672 (D.C.Cir.1992); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984). In

diversity cases, the state substantive law determines who owns a cause of action. *Star Mfg. Co., Inc. v. Mancuso*, 680 F.Supp. 1496, 1498 (D.Kan.1988). Kansas law governs this case. The issue, then, is whether King owns a cause of action for negligence or breach of warranty under Kansas law.

Defendant argues that plaintiff does not own the substantive right which it seeks to enforce. Rather, according to defendant, the substantive right belongs to the CCC, which owned the grain at the time the spoilage occurred. Defendant argues that there was no assignment of rights when the CCC sold the grain to plaintiff. Moreover, any attempt to assign the negligence claim would be invalid because Kansas law does not permit assignment of tort claims. *Star Mfg. Co.*, 680 F.Supp. at 1498.

Plaintiff argues that it did not bring this action as the owner of the grain or as an assignee of the CCC's claims, but rather as the bailee in possession of the grain at the time of the spoilage. Defendant counters that plaintiff cannot recover as a bailee for three reasons. First, defendant contends that plaintiff did not bring the action for the benefit of the CCC, as Rule 17(a) requires, but instead intends to keep any recovery as a windfall. Second, defendant argues that plaintiff cannot sue as a bailee because it later became the owner of the grain. According to defendant, a party can bring an action as a bailee only while the bailment continues. Third, defendant expresses concern that it could be exposed to double liability because the bailor has a tort cause of action for damage to its goods.

■ A brief discussion of the rights of bailees against third parties is in order. It is universally held that a bailee can bring an action to recover for conversion of or damage to bailed goods. *E.g., Omni–Wave Elec. Corp. v. Marshall Indus.*, 127 F.R.D. 644 (D.Mass.1989) (applying Massachusetts law); *Frockt v. Goodloe*, 670 F.Supp. 163 (W.D.N.C.1987) (applying North Carolina law). *See also* Ralph E. Boyer et al., The Law of Property: An Introductory Survey ch. 2, § 2.5, at 16. The bailee is entitled to recover the full measure of damages even if some of the recovery rightfully belongs to the bailor, usually the true owner of the goods. *Id.* at 24. As the bailee is responsible to the bailor for the goods bailed, the bailee is also responsible for the monetary recovery, which stands in the place of the bailed goods. Therefore, to the extent that a bailee recovers damages beyond what he has suffered, the bailee holds the recovery for the bailor rather than for himself. *See id.* at 25. Recovery by the bailee of the bailor's damages bars any subsequent action by the bailor. *Id.* at 24–25.

■ The foregoing paragraph answers defendant's first and third arguments. This leaves defendant's contention that in this case plaintiff has no cause of action as a bailor because it purchased the bailed goods after the damage was done. The court does not find this argument persuasive. Defendant presents no authority that a bailee must bring its action during the term of the bailment. Furthermore, bailees are permitted to bring suit against third parties because of their possessory interest in the goods at the time of the damage or conversion and because of their responsibility to the bailor to account for the goods bailed. Permitting such an action where, as here, the bailee has already accounted to the bailor for the value of the bailed goods is in keeping with the rationale for allowing suits by bailees. In this case it would appear that because the damage was discovered only after the purchase, plaintiff accounted to the bailor, the CCC, by paying the price of undamaged grain.

In addition to the loss of value of the grain, plaintiff claims other damages. Plaintiff incurred substantial costs in removing the undamaged grain to prevent further spoilage. As the owner of the storage facility and a party to the contract with defendant, plaintiff undoubtedly owns any cause of action as to those damages. Therefore, defendant is not entitled to summary judgment on this issue.

## II. King's Net Damages

Defendant next contends that plaintiff cannot recover in this case because it has suffered no net damages. According to defendant, plaintiff has received more than the

amount of damages claimed in insurance proceeds and forgiveness of debt.

First, defendant argues that plaintiff benefitted from the loss of grain because as a result of that loss, Wells Fargo Agriculture Credit Corporation ("WFAC") forgave plaintiff's debt to it. Plaintiff does not dispute that it agreed to turn over to WFAC several properties in consideration for WFAC's release of plaintiff from liability for several loans. However, as plaintiff notes, there is no indication that the loss of grain caused WFAC to forgive the debt or to agree to less consideration for the forgiveness. Therefore, the court cannot hold that the plaintiff's damages are reduced by the amount of debt forgiven.

Second, defendant argues that plaintiff did not sustain all the loss claimed because it received $150,000 in insurance proceeds as a result of the loss of grain. Plaintiff was insured, but there was a dispute as to coverage. The dispute was settled, with the insurance carrier, Old Republic Insurance Company, paying $150,000 to WFAC as partial payment for the debt that plaintiff owed WFAC. Old Republic Insurance does not claim subrogation rights in any recovery by plaintiff. Defendant claims that the recovery of insurance proceeds was a benefit to plaintiff that offset the loss. Therefore, according to defendant, the plaintiff's damages should be reduced by $150,000 under the "benefits rule."

Plaintiff counters that the benefits rule does not apply in this case because any benefits to plaintiff came from third party sources, and not from the defendant. Plaintiff argues that any benefits received by third parties are governed by the collateral source rule, which states that benefits a plaintiff receives from a source wholly independent of the defendant do not diminish plaintiff's damages. Plaintiff argues that the collateral source rule applies equally in contract actions and in tort actions.

The court will first address the collateral source rule. "The collateral source rule permits an injured party to recover full compensatory damages from a tortfeasor irrespective of the payment of any element of

those damages by a source independent of the tortfeasor." *Johnson v. Baker*, 11 Kan. App.2d 274, 278, 719 P.2d 752 (1986) (quoting *Wentling v. Medical Anesthesia Serv's*, 237 Kan. 503, 515, 701 P.2d 939 (1985)). The Kansas Supreme Court has held that a tort plaintiff's damages are not diminished where the plaintiff is indemnified by insurance. *Rexroad v. Kansas Power & Light Co.*, 192 Kan. 343, 354, 388 P.2d 832 (1964). The plaintiff's insurance contract is of no concern to the defendant and does not affect the defendant's liability. *Id.* at 355, 388 P.2d 832. Thus, whether the insurer is entitled to subrogation does not affect the application of the rule. *See id.* at 354, 388 P.2d 832; *Southard v. Lira*, 212 Kan. 763, 770, 512 P.2d 409 (1973).

Defendant correctly notes that the collateral source rule does not apply in contract actions. *See Anderson v. Rexroad*, 180 Kan. 505, 518, 306 P.2d 137 (1957). However, in this case, the plaintiff's complaint alleges breach of implied and express warranties, negligence and strict liability. As to plaintiff's claims of breach of implied warranties, such an action may be brought either in contract or in tort.

> "In an action for breach of implied warranty, a party may plead and proceed upon the theories of both contract and tort until the facts have been developed and the case is ready to be submitted to the trier of the facts. One seeking to recover for breach of an implied warranty must eventually elect a definite theory before final submission to the trier of the facts."

*Ware v. Christenberry*, 7 Kan.App.2d 1, syl. ¶ 7, 637 P.2d 452 (1981). Plaintiff has proceeded on alternative theories and has not yet elected a theory. Therefore, it is unclear at this time whether the collateral source rule will apply in this case.

The benefits rule applies where the collateral source rule does not apply. Thus, the benefits rule applies in contract actions and in tort actions if the defendant conferred a benefit on the plaintiff that offsets the plaintiff's loss. The court disagrees, in part, with the plaintiff's argument that the benefits rule applies only if the defendant is the

source of the benefit. Plaintiff's argument is correct with respect to tort actions. However, the amount of damages in a contract action is to be reduced by the amount of a benefit the plaintiff has received from a third party. *See Anderson,* 180 Kan. at 517–18, 306 P.2d 137.

When the benefits rule applies, the defendant is permitted to introduce evidence that plaintiff's claimed injury was also a benefit to the plaintiff, and the plaintiff's damages will be reduced by the amount of that benefit. In this case it is clear that plaintiff received a $150,000 benefit as a result of the damage to the grain and that a third party, namely Old Republic, was the source of that benefit. However, because it is not yet clear whether the case will be submitted to the trier of fact on a tort theory or on a contract theory, the court cannot hold that the benefits rule applies in this case. Therefore, the defendant is not entitled to summary judgment on the damages issue.

**IT IS BY THIS COURT THEREFORE ORDERED** that defendant Caldwell's motion for summary judgment (Doc. 71) is hereby denied.